UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN J. PENTZ, <br>         Plaintiff, <br><br> v. <br><br> ALM, <br>         Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 05-10207 (JLT) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff John J. Pentz hereby opposes Defendant's Motion To Dismiss his Complaint. Contrary to Defendant's assertions, the article in question is neither complimentary nor benign.

The United States Court of Appeals for the Seventh Circuit authored the lead decision on the propriety of representing an objector to a class action settlement with the intention of earning a fee, Vollmer v. Selden, 350 F.3d 656 (7th Cir. 2003) ("Vollmer"). A reading of Vollmer makes clear why referring to an objector's attorney as a "holdup artist" can never be referred to as playful "hyperbole."

In Vollmer, the district court sanctioned an objector's attorney for filing an objection for an improper purpose – namely, to earn a fee. One of the grounds given by the district court for the sanctions was the reputation of objector's counsel, as gleaned by the judge from sources he consulted on his own. "The district court concluded that Selden and Rosenthal were 'not real class action lawyers' but instead that 'they follow people around the country, ... and then stick their nose in [a case] and they extract money.'" Id. at 659.

The Seventh Circuit clarified that "it is not improper to file a non-frivolous claim in the hope of getting paid," and that this applies as much to objector's attorneys as to plaintiff's attorneys. Id. at 660. On the other hand, if an attorney presents a motion solely "to harass or to cause unnecessary delay or needless increase in the cost of litigation," the attorney's conduct is improper and sanctionable. Id. at 659. The distinction is critical. Objectors provide a beneficial service in assisting courts in reviewing proposed settlements and in improving the terms of the settlement for the class. Objectors who object solely for the purpose of extortion, however, drive up costs without any corresponding benefit.

> An [objector's counsel] might get paid by raising the value of a class action settlement and receiving a percentage of the increase in value or a fixed-payment for having improved the settlement; on the other hand, he might intervene and cause expensive delay in the hope of getting paid to go away. The former purpose for intervening would be entirely proper, while the latter would not.

Id. at 660.

While the Seventh Circuit ultimately reversed the sanctions, and scolded the district court for going outside of the evidence, id. at 663, the attorneys who were the subject of Vollmer were forced to endure the burden and expense of appealing improper sanctions to the Court of Appeals, twice. It is clear that the district court judge relied, at least in part, on hearsay contained in media articles describing the practices of the objectors' attorneys. See Vollmer v. Publishers Clearing House, 248 F.3d 698, 710 n.9 (7th Cir. 2001)(class counsel cited to a *Wall Street Journal* article describing the practice of objectors' counsel).

## I.    Holdup Artist.

When read against the background of Vollmer, supra, it is clear that the article that appeared in the Litigation 2004 Supplement intended to place Plaintiff in the latter category described in that case: *i.e.* lawyers who object to a settlement in order to get paid to go away. "Holdup artist" is not a term chosen by The American Lawyer to be consistent with a "Wild West" theme, but as a synonym for extortionist. One cannot write an article about a lawyer who devotes his practice to representing objectors to class action settlements and use the term "holdup artist," then claim ignorance that that term, and specifically that term, has been used to accuse lawyers who represent objectors of extortion.

Defendant's explanation of its use of the term "holdup artist" is so tortured that it strains credibility. The term "holdup artist" is "literally accurate," Defendant contends, because all intervenors in an action inevitably cause some delay. First, an objector does not necessarily cause any delay in a class action case, unless the Defendant refers to the brief 10 or 15 minutes by which an objector may prolong a fairness hearing by attending and speaking on behalf of his objections. A fairness hearing is scheduled before any objectors appear in a case, and in 99% of all class actions the fairness hearing goes forward as scheduled regardless of the number of objections received. Of course, the more objectors who appear at the fairness hearing, the longer it may take to conclude the hearing, but any such "delay" is no more than an hour or two.[1]

---

[1] It may take a court longer to write its opinion approving a class action settlement when there are objectors advancing arguments against approval. Any such delay, however, may have more to do with the availability of law clerks and other pressing business than the difficulty of refuting the objections. Some courts take longer to issue a decision in an uncontested case than others do to issue a decision when there are ten or more objections.

3

Second, Plaintiff's objective in objecting to a settlement is not to delay its approval, but to secure its rejection. While amendment of a settlement is sometimes the result of an objection, the objective of every objection to a class action settlement is to prevent the approval of the settlement in its current form.

Defendant cannot have been referring to this trivial delay when it used the term "holdup artist." More to the point, no reasonable reader would construe it that way. No lawyer or judge reading the article would conclude that Plaintiff is someone who causes fairness hearings to run a few minutes longer than they otherwise would. Instead, most reasonable readers would conclude that Plaintiff is an extortionist who threatens to prevent final approval of class action settlements unless he is paid off. That is both the common meaning of "holdup artist," as well as the specific term of art that has been applied to attorneys who represent objecting class members in class action settlements, like the attorneys sanctioned in Vollmer, supra. Plaintiff has never seen the term used to refer to someone who causes incidental delay associated with routine motion practice; under that definition, all litigants are "holdup artists."

Defendant's argument that the term is not to be taken "literally" because it did not intend to suggest that Plaintiff used a firearm in his shakedown borders on childishness. Plaintiff did not allege that a reasonable reader might conclude that he is a dangerous armed felon. Guns are not allowed in courtrooms anymore anyway, making it very difficult for any attorney relying on armed coercion to make a living these days. Indeed, the term "holdup artist" is almost *always* used metaphorically nowadays. It is very rare, if not unheard of, for a newspaper to refer to an armed robber as a "holdup artist." The term has taken on a new literal meaning which may at one time have been metaphorical, but is no longer. The new literal meaning of "holdup artist" is extortionist.

4

> The term "holdup artist" must be given its ordinary meaning.
>
> Courts will not strain to interpret [statements] in their wildest and most inoffensive sense to hold them non-libelous... The words are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood by the public to which they are addressed.

November v. Time, Inc., 194 N.E.2d 126, 128 (1963). "What counts is not the painstaking parsing of a scholar in his study, but how the ... article is viewed through the eyes of a reader of average interests." Hill, Defamation and Privacy under the First Amendment, 76 Colum. L. Rev. 1205, 1332 n.132 (1976). Reasonable, ordinary judges and lawyers would read the term "holdup artist" in the context of the article not to mean "delayer" or "gunslinger," but to mean "extorter."

The audience for the Litigation 2004 Supplement to the American Lawyer is almost exclusively lawyers and judges.[2] "For a specialized audience, the statement's defamatory meaning is to be judged by the average and ordinary reader acquainted with the parties and the subject matter." Gyonlekaj v. Sot, 308 A.D.2d 471, 473 (2d Dep't 2003). The audience for the Litigation 2004 Supplement is clearly specialized. It is likely that, given the Supplement's focus on the plaintiffs' bar, the audience for the Supplement is comprised of lawyers who are familiar with the plaintiffs' bar and class action litigation generally, as well as with the existence of lawyers who represent objectors to class action settlements. These attorneys will clearly understand what is meant by the term of art "holdup artist," which has obtained a secondary meaning within the plaintiffs' class action bar. There is no danger that these lawyers, who have more than

---

[2] While this fact was not alleged in Plaintiff's Complaint, the Court may take judicial notice of it.

5

a passing familiarity with issues relating to class actions and settlement approval, would interpret the term "holdup artist" to refer to someone who is "skilled at causing delay."

## II.     Visa/Mastercard.

Defendant's statements with regard to Plaintiff's achievements in the Visa/Mastercard litigation are demonstrably false, based simply on a reading of the reported decisions in that litigation. While the court gave Plaintiff some credit for making arguments that were accepted by the court, the judge made clear that he would have arrived at the same decision even without the objectors. Furthermore, there were at least five groups of objectors who each claimed credit for the fee reduction. Four of those groups received compensation for the time they spent on the objections, just like Plaintiff did.

There have been cases where Plaintiff was the sole objector and could rightly claim credit for having improved the settlement. See, e.g., Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F.Supp.2d 561 (E.D. Pa. 2001)(rejecting notion that "a bad settlement is better than no settlement at all"). It is curious that the Defendant would choose to focus upon a case in which Plaintiff was only one of several objectors, and where the court specifically rejected the argument that the objectors were responsible for the court's ruling on fees. If Defendant had undertaken the most rudimentary research of the Visa/Mastercard case, it would have realized that the case is not very illustrative of anything regarding the Plaintiff. The inaccurate statements about Plaintiff's role in Visa/Mastercard are characteristic of the negligence that affects the entire piece.

6

### III.     The <u>Toshiba</u> Case Quotation.

Defendant next claims that the article makes "clear" that the quotation from the <u>Shaw v. Toshiba</u> case from the Eastern District of Texas does not apply to Plaintiff. The basis for this argument is that the article identifies four cases in which Plaintiff has been involved, and <u>Shaw</u> is not one of them. This is a preposterous argument.

First, for this argument to hold water, the list of Plaintiff's cases would have to be an exhaustive one. Plaintiff has been involved in 14 reported class actions on behalf of objectors, see <u>Exhibit A</u>, and numerous other unreported ones. The article lists among cases in which Plaintiff has been involved "Bridgestone/Firestone Retail and Commercial Operations LLC, Lucent Technologies Inc., At&T Corp., and the Goodyear Tire & Rubber Co." Plaintiff has no idea what the latter case refers to. As <u>Exhibit A</u> demonstrates, Plaintiff has been involved in cases in which Bridgestone/Firestone Inc. and Lucent have been defendants (although the cases are captioned incorrectly in the article). Plaintiff also objected to a settlement involving AT&T Corp. in state court in Madison County, Illinois.

The list does not include 12 other reported cases of Plaintiff's, as well as numerous unreported ones. Because it is not exhaustive, the fact that <u>Shaw v. Toshiba</u> is not included in the list hardly demonstrates to a reasonable reader that Plaintiff was not involved in that case. The list of cases does not include the <u>Visa/Mastercard</u> case either, which the article discusses elsewhere.

The context of the article, in contrast, strongly suggests that the quote from the <u>Toshiba</u> case was directed at Plaintiff. Why would the author include a quotation from a case in which the Plaintiff was not involved in an article that has the Plaintiff as its subject? The only way a reader would learn that the <u>Toshiba</u> quotation was not directed

7

at Plaintiff is to look up that case and read the opinion. This would not be easy for the reader, since the article does not even provide an accurate caption of the case, much less a citation. If the reader has LEXIS, perhaps he can track the case down in the Texas federal court database. The law does not require such extreme efforts by the reader to verify the veracity of an article. Fact-checking is for the Defendant to do.

Finally, the defamatory aspect of the misleading quotation from <u>Toshiba</u> is not the expression of judicial scorn for Plaintiff, but the suggestion that Plaintiff has filed "canned, generic objections" in an effort to "extract a fee," something that would place him in the second category of objector's counsel identified by the Seventh Circuit in <u>Vollmer</u>, <u>supra</u>. The reference to "canned objections" reinforces and is consistent with the false and defamatory accusation that Plaintiff is a "holdup artist" that appears previously in the article. Taken together, the term and the quotation convey the overall message that Plaintiff is a lawyer who files poorly drafted, generic pleadings in class actions for the sole purpose of extracting a fee. Why would a reasonable reader assume that the quotation from <u>Toshiba</u> does not apply to a lawyer previously identified as a "holdup artist?" The normal, reasonable conclusion would be just the opposite.[3]

---

[3] Had the Defendant been intending to contrast the <u>Toshiba</u> objectors with Plaintiff, there are far clearer and more literate ways to do so. For example, the Defendant could have led into the <u>Toshiba</u> quotation by writing "While Plaintiff earned the praise of Judge Gleason in <u>Visa/MC</u>, some of his colleagues have not always endeared themselves to judges." The failure to place <u>Toshiba</u> in proper context is even more surprising given that the lawyers who were the subject of Judge Heartfield's quotation in <u>Toshiba</u> represented objectors in the <u>Visa/Mastercard</u> case.

## **CONCLUSION**

The Defendant has failed to demonstrate that the subject article is susceptible of only one, non-defamatory meaning. Defendant's strained, allegedly non-defamatory interpretation of the article is nonsensical and unreasonable. Because the article must be evaluated from the standpoint of an ordinary member of the target audience, judges and lawyers, the Court cannot hold as a matter of law that there is only one, benign, meaning that could be ascribed to the piece. Therefore, the Defendant's Motion to Dismiss must be denied.

John J. Pentz, *pro se*

_____
John J. Pentz
2 Clock Tower Place, Suite 260G
Maynard, MA 01754
Ph: (978) 461-1548
Fax: (707) 276-2925

Source: Legal > Cases - U.S. > Federal & State Cases, Combined
Terms: john /3 pentz and date geq (01/31/2000) (Edit Search)

↓Select for FOCUS™ or Delivery

☐ ◎  1. In re Warfarin Sodium Antitrust Litig., Nos. 02-3603, 02-3755, 02-3757 & 02-3758, UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT, 391 F.3d 516; 2004 U.S. App. LEXIS 25180; 2004-2 Trade Cas. (CCH) P74,632, October 29, 2003, Argued, December 8, 2004, Filed

   **OVERVIEW:** Judgment approving a settlement between a pharmaceutical company and co-pay consumers, out-of-pocket consumers, and third party payors was affirmed; the district court did not abuse its discretion in finding the settlement to be fair and reasonable.

   **CORE TERMS:** consumer, settlement, generic, warfarin, sodium, notice, proposed settlement, negotiation, class action, predominance ...

   ... GAREY L. MCCARTY. **John** J. **Pentz** (Argued), Maynard, MA. ...

☐  2. Morris v. Lifescan, Inc., No. 02-15765, No. 02-15779, UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT, 54 Fed. Appx. 663; 2003 U.S. App. LEXIS 820, December 5, 2002, Argued and Submitted, San Francisco, California, January 16, 2003, Filed, RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

   **OVERVIEW:** The district court's finding that the settlement was solely the result of class counsel's work was supported by the record and therefore not clearly erroneous, so the award of 33 percent to class counsel was affirmed.

   **CORE TERMS:** benchmark, fee award, abuse of discretion, class action, exceptional, settlement, approving, upward

   ... Jackson, Intervenor-Appellant: **John** J. **Pentz,** THE OBJECTORS GROUP, Sudbury, ...

☐ ◎  3. Schwartz v. Citibank, N.A., No. 00-56958, No. 00-57037, No. 01-55177, No. 01-55179, UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT, 50 Fed. Appx. 832; 2002 U.S. App. LEXIS 21456, September 10, 2002, Argued and Submitted, Pasadena, California, October 10, 2002, Filed, RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT., US Supreme Court certiorari denied by Yeomans v. Schwartz, 2003 U.S. LEXIS 3257 (U.S., Apr. 28, 2003) US Supreme Court certiorari denied by Simon v. Schwartz, 2003 U.S. LEXIS 3258 (U.S., Apr. 28, 2003)

   **OVERVIEW:** Named class representatives adequately and fairly represented interests of class, since named plaintiffs, who suffered losses due to credit card companies' polices, and class members who did not suffer losses, all had interest in changing policies.

   **CORE TERMS:** settlement, class certification, late fees, independently, finance, settlement fund, amount of fees, articulated, conditional, challenging ...

   ... Intervenor (00-56958, 00-57037): **John** J. **Pentz,** Sudburry, MA. For ...

☐ 🌀 4. Spark v. MBNA Corp., NOS. 01-3370 and 01-3462, UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT, 48 Fed. Appx. 385; 2002 U.S. App. LEXIS 19594, June 28, 2002, Argued, No. 01-3370; June 28, 2002, Submitted Pursuant to Third Circuit LAR 34.1(a), No. 01-3462, September 16, 2002, Opinion Filed, RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT., Motion granted by, Motion denied by, Costs and fees proceeding at Spark v. MBNA Corp., 2003 U.S. Dist. LEXIS 19397 (D. Del., Oct. 30, 2003)

**OVERVIEW:** Class action settlement was affirmed because under the terms of original and amended settlement agreements, all members of the class were appropriately entitled to receive identical award and modification did not adversely affect any class member.

**CORE TERMS:** automatic, settlement, notice, cardholder, objector, class member, estimate, current-active, credit card, estimated ...

... Mark C. Sullivan. **John** J. **Pentz** (Argued), The Objectors Group, ...

☐ 5. Reynolds v. Benefit Nat'l Bank, Nos. 00-3122, 00-3178, 00-3181, 00-3182, 00-3367, 01-1239, 01-1617, 01-1654, 01-2231, 01-2339, 01-2445, 01-2747, 01-2785, & 01-3545, UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT, 288 F.3d 277; 2002 U.S. App. LEXIS 7384; 52 Fed. R. Serv. 3d (Callaghan) 1006, February 12, 2002, Argued, April 23, 2002, Decided, As Corrected May 17, 2002. On remand at Reynolds v. Benefit Nat'l Bank, 2003 U.S. Dist. LEXIS 6422 (N.D. Ill., Apr. 15, 2003)

**OVERVIEW:** Trial court abused its discretion by approving settlement in class action filed against a bank that provided tax refund anticipation loans and a tax preparation company that helped customers obtain those loans.

**CORE TERMS:** settlement, refund, class action, customer, anticipation, objector, negotiation, reversion, estimate, adequacy ...

... Chicago, IL USA. **John** J. **Pentz,** Sudbury, MA. For ...
... HUTSLER, Birmingham, AL. **John** J. **Pentz,** Sudbury, MA. For ...

☐ 6. In re Paypal Litig., Case Number C-02-1227-JF (PVT), UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION, 2004 U.S. Dist. LEXIS 22470, October 13, 2004, Decided,   NOT FOR CITATION

**OVERVIEW:** District court approved attorney fee award of 30 percent of common fund where, inter alia, settlement was favorable to the class and was solely the result of attorneys' hard work over more than two years, and case would have been risky to litigate.

**CORE TERMS:** settlement, notice, long-form, proposed settlement, fee award, claimants, class member, standing to object, common fund, experienced ...

... Redwood City, CA; **John** J. **Pentz,** Maynard, MA. For ...

7. In re Visa Check/MasterMoney Antitrust Litig., CV-96-5238 (JG), UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK, 2004 U.S. Dist. LEXIS 8729, April 27, 2004, Decided

   **OVERVIEW:** Where counsel for plaintiffs distinct from lead plaintiffs in a class action had sharpened the debate, they were entitled to attorneys fees, but because they did not provide a savings to the class, the award was a flat fee and not an hourly rate.

   **CORE TERMS:** objector, lodestar, recommendation, recommended, multiplier, briefing

   ... 16, 2004; (2) **John J. Pentz** (counsel for objectors ...
   ... not file an objection.**John J. Pentz** and J. Scott Kessinger ...

8. In re Visa Check/MasterMoney Antitrust Litig., MASTER FILE NO. CV-96-5238 (Gleeson, J.) (Mann, M.J.), UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK, 2004 U.S. Dist. LEXIS 8737, April 2, 2004, Decided, Adopted by, Costs and fees proceeding at, Request granted, in part In re Visa Check/MasterMoney Antitrust Litig., 2004 U.S. Dist. LEXIS 8729 (E.D.N.Y., Apr. 27, 2004)

   **OVERVIEW:** In an antitrust action, a magistrate recommended that the court grant the objectors a reasonable award of attorneys' fees; some of the viewpoints and facts highlighted by the objectors assisted the court in making an appropriate fee award.

   **CORE TERMS:** objector, hourly rate, respectfully, recommend, settlement, travel, lodestar, reimbursement, fee request, compensated ...

   ... 350;  (6) award **John H. Pentz**, Esq., counsel for ...
   ... Fees and Expenses by **John J. Pentz** and Scott J. Kessinger (" ...
   ... Scott Kessinger, Esq., and **John Pentz**, Esq., contend that, "as attorneys who ...
   ... three attorneys, as well as **John H. Pentz**, have "moved the Special Master ...
   ... Ron Jen, Inc.**John H. Pentz**, Esq., appearing on behalf of ...
   ... Support of Fee Petition of **John J. Pentz** and J. Scott Kessinger at ...
   ... 350;  (6) award **John H. Pentz**, Esq., counsel for ...

9. In re Visa Check/Mastermoney Antitrust Litig., Master File No. 96 CV 5238 (JG), UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK, 297 F. Supp. 2d 503; 2003 U.S. Dist. LEXIS 22898; 2004-1 Trade Cas. (CCH) P74,262, December 19, 2003, Decided, As Corrected January 7, 2004. Magistrate's recommendation at, Costs and fees proceeding at In re Visa Check/MasterMoney Antitrust Litig., 2004 U.S. Dist. LEXIS 8737 (E.D.N.Y., Apr. 2, 2004) Affirmed by Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 2005 U.S. App. LEXIS 74 (2d Cir. N.Y., Jan. 4, 2005)

   **OVERVIEW:** Requested fee of 18 percent of fund was excessive in light of court's obligation to fashion a fee award with a "jealous regard" for the financial interests of five million plaintiffs and counsel's request to be paid almost 10 times their hourly rate.

   **CORE TERMS:** settlement, debit, merchant, lead counsel, card, multiplier,

notice, objector, interchange, quotation ...

... a Smuggler's Cove: **JOHN J. PENTZ**, Class Action Fairness ...

10. Spark v. MBNA Corp., Civil Action No. 96-497-KAJ, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE, 289 F. Supp. 2d 510; 2003 U.S. Dist. LEXIS 19397, October 30, 2003, Decided

**OVERVIEW:** District court denied a fee request by the objectors to a proposed settlement of a misrepresentation and fraud class action as they failed to show that identifying a court case and pointing out a lodestar multiplier error benefitted the class.

**CORE TERMS:** objector, settlement, supplemental petition, multiplier, class action, lodestar, fee award, renewed, moot, oppose ...

... moot; The renewed petition of **John J. Pentz**, Esq. for an award of ...
... counsel for defendants. **John J. Pentz**, Esq., Sudbury, Massachusetts, ...
... before me are the renewed petition of **John J. Pentz**, Esq. for an award of ...
... 3. The renewed petition of **John J. Pentz**, Esq. for an award of ...

Source: Legal > Cases - U.S. > Federal & State Cases, Combined
Terms: john /3 pentz and date geq (01/31/2000) (Edit Search)
View: Cite
Date/Time: Monday, January 31, 2005 - 11:53 AM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available
* Click on any Shepard's signal to Shepardize® that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Search - 25 Results - john /3 pentz
Case 1:05-cv-10207-JLT   Document 15   Filed 04/21/2005   Page 14 of 18
Page 1 of 4

Source: Legal > Cases - U.S. > Federal & State Cases, Combined
Terms: john /3 pentz and date geq (01/31/2000) (Edit Search)

✦Select for FOCUS™ or Delivery

☐ ◎ 11. Clark v. Experian Info. Solutions, Inc., C/A No. 8:00-1217-22, C/A No. 8:00-1218-22, C/A No. 8:00-1219-22, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA, ANDERSON DIVISION, 2003 U.S. Dist. LEXIS 22908, October 3, 2003, Decided, October 3, 2003, Filed; October 7, 2003, Entered

**OVERVIEW:** In a class actions against credit reporting agencies, court replaced a preliminary injunction to reflect that persons enjoined were class members, and that time for exclusion from class had passed. No authority precluded continued injunctive relief.

**CORE TERMS:** settlement, injunction, continuation, preliminary injunction, class action, preliminarily, enjoined, lawsuit, notice, putative class action ...

... Hardee, Columbia, SC. **John** Jacob **Pentz**, Class Action Fairness ...

☐ ◎ 12. Clark v. Experian Info. Solutions, Inc., C/A No. 8:00-1217-22, C/A No. 8:00-1218-22, C/A No. 8:00-1219-22, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA, ANDERSON DIVISION, 219 F.R.D. 375; 2003 U.S. Dist. LEXIS 25146, October 2, 2003, Decided, October 2, 2003, Filed, Later proceeding at Clark v. Experian Info. Solutions, Inc., 2003 U.S. Dist. LEXIS 22908 (D.S.C., Oct. 3, 2003)

**OVERVIEW:** The court identified areas of concern with proposed settlements of class actions arising from credit reporting agencies' references to bankruptcy filings by joint account holders or co-signers of the person named in a credit report.

**CORE TERMS:** settlement, objector, notice, website, misleading, consumer, actual damages, class certification, adequacy, credit report ...

... Hardee, Columbia, SC. **John** Jacob **Pentz**, Class Action Fairness ...

☐ ◆ 13. In re Warfarin Sodium Antitrust Litig., MDL No. 98-1232-SLR, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE, 212 F.R.D. 231; 2002 U.S. Dist. LEXIS 16375; 2002-2 Trade Cas. (CCH) P73,791, August 30, 2002, Decided, Affirmed by In re Warfarin Sodium Antitrust Litig., 2004 U.S. App. LEXIS 25180 (3d Cir. Del., Dec. 8, 2004)

**OVERVIEW:** In an action involving the payment of a prescription drug, the proposed class action settlement agreement was granted; the settlement, which resulted from intensive, arm's length negotiations between the parties, was fair.

**CORE TERMS:** settlement, consumer, generic, warfarin, sodium, notice, class action, settlement fund, claimant, class certification ...

... W. O'Kelley, Jr. **John** J. **Pentz**, Esquire of The Objectors Group, ...

☐ ◆ 14. Tenuto v. Transworld Sys., CIVIL ACTION NO. 99-4228, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 2002 U.S.

Dist. LEXIS 1764, January 31, 2002, Decided, January 31, 2002, Filed; February 2, 2002, Entered

**OVERVIEW:** After consideration of many factors, the court approved the consumer class action settlement agreement as fair, adequate and reasonable under the circumstances. The attorney fees, set at 35 percent of the total settlement, were reasonable.

**CORE TERMS:** settlement, notice, garnishment, settlement fund, class action, form letter, memorandum, settlement agreement, discovery, subclass ...

... NARBERTH, PA USA. **JOHN J. PENTZ,** JR., OBJECTOR, Pro ...
... Mindek was to opt out.**John J. Pentz,** Jr. pressed two ...

15. Schwartz v. Dallas Cowboys Football Club, Ltd., CIVIL ACTION NO. 97-5184, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 2001 U.S. Dist. LEXIS 24121; 2001-2 Trade Cas. (CCH) P73,513, November 21, 2001, Decided, November 26, 2001, Filed

**OVERVIEW:** The revised settlement agreement addressed the court's concerns in denying the original settlement agreement by increasing the fund, narrowing the release, and reducing the attorneys' fees, and it was approved as fair, just, and reasonable.

**CORE TERMS:** settlement, settlement agreement, final approval, settlement fund, television, satellite, reasonableness, discovery, estimate, modest ...

... JAMES SCHAEFFER, OBJECTOR: **JOHN J. PENTZ,** SUDBURY, MA USA. ...

16. Schwartz v. Dallas Cowboys Football Club, Ltd., CIVIL ACTION NO. 97-5184, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 157 F. Supp. 2d 561; 2001 U.S. Dist. LEXIS 12527; 2001-2 Trade Cas. (CCH) P73,410, August 13, 2001, Decided, August 13, 2001, Filed

**OVERVIEW:** In antitrust suit regarding the packaged satellite television broadcasts of professional football games, the motion for final approval of a settlement agreement was denied because it was not fair, reasonable, or adequate.

**CORE TERMS:** settlement agreement, game, settlement, satellite, season, television, discount, class action, package, regular ...

... JAMES SCHAEFFER, OBJECTOR: **JOHN J. PENTZ,** SUDBURY, MA USA. ...

17. Spark v. MBNA Corp., Civil Action No. 96-497-RRM, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE, 157 F. Supp. 2d 330; 2001 U.S. Dist. LEXIS 10929, August 1, 2001, Decided

**OVERVIEW:** The court approved the settlement of a class action by bank card holders against a bank for misrepresenting a promotional rate of interest, but it rejected the proposed fees and costs, and ordered a reduced amount.

**CORE TERMS:** settlement, multiplier, objected, partner, class member,

settlement agreement, billing, summary judgment, work done, elect ...

... 30,930.15.On June 7, **John Pentz**, counsel for two ...

18. Benacquisto v. Am. Express Fin. Corp., Case No. 00-1980 DSD/JMM, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA, 2001 U.S. Dist. LEXIS 23914, May 15, 2001, Decided, May 15, 2001, Filed, Judgment Entered

**OVERVIEW:** A final settlement agreement was approved and a class action against financial advisors and life insurance companies was dismissed where the class had proper notice, and the agreement was in good faith and was fair, reasonable, and adequate.

**CORE TERMS:** settlement, causes of action, entity, notice, proposed settlement, life insurance policy, ownership interest, annuity contract, election, wrongdoing ...

... JR, Dr., intervenor: **John J Pentz**, The Objectors Group, Sudbury, ...

19. Mangone v. First USA Bank, Case No. 00-cv-881-MJR, UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS, 206 F.R.D. 222; 2001 U.S. Dist. LEXIS 22374, February 2, 2001, Decided

**OVERVIEW:** Court approved a class action settlement which provided almost full reimbursement to class members in suit for defendants' late processing of payments by credit card holders resulting in late fees, finance charges, and increased interest rate.

**CORE TERMS:** settlement, notice, settlement agreement, cardmember, processing, objector, lawsuit, class action, finance charge, proof of claim ...

... M SHAPIRO, intervenor: **John J. Pentz**, Sudbury, MA. For ...

20. Reinhart v. Lucent Techs. (In re Lucent Techs., Inc. Sec. Litig.), Case No. 00-cv-621 (JAP), Case No. 01-cv-3491 (JAP), Case No. 02-cv-4852 (JAP), Case No. 01-cv-5229 (JAP), Case No. 02-2460 (JAP), Case No. 02-4260 (JAP), UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, 327 F. Supp. 2d 426; 2004 U.S. Dist. LEXIS 14111; Fed. Sec. L. Rep. (CCH) P92,880, July 19, 2004, Decided

**OVERVIEW:** In connection with settlement of securities class action, court awarded common shareholders lead counsel (LC) 17 percent of settlement fund; inter alia, litigation was complex and long-enduring, and LC was at helm of entire settlement process.

**CORE TERMS:** settlement, lodestar, notice, negotiation, reimbursement, percentage-of-recovery, devoted, fee award, skill, derivative ...

... 02-2460 (JAP)): **John J. Pentz**, Esq. For Objector ...
... Gordon, through his attorney, **John J. Pentz**, Esq.. Gordon essentially ...

Source: Legal > Cases - U.S. > Federal & State Cases, Combined

Source: Legal > Cases - U.S. > Federal & State Cases, Combined
Terms: **john /3 pentz and date geq (01/31/2000)** (Edit Search)

↙Select for FOCUS™ or Delivery

☐ ⚠ 21. Benedict v. Fed. Kemper Life Assur. Co., No. 1-99-3758, APPELLATE COURT OF ILLINOIS, FIRST DISTRICT, FIRST DIVISION, 325 Ill. App. 3d 820; 759 N.E.2d 23; 2001 Ill. App. LEXIS 780; 259 Ill. Dec. 543, October 9, 2001, Decided, Released for Publication December 10, 2001.

**OVERVIEW:** Policy holders could not maintain breach of contract claim where appellate court found no ambiguity concerning payment of premiums and enforcement of alleged promises made at point of sale would violate parol evidence rule.

**CORE TERMS:** premium, illustration, parol evidence, out-of-pocket, ambiguity, ambiguous, insured, unambiguous, premium payment, vanishing ...

... John Peter Zavez, **John Pentz,** of Berman, DeValerio & Pease ...

☐ ♦ 22. Stigum v. Skloff, [NO NUMBER IN ORIGINAL], STATE OF MASSACHUSETTS, APPELLATE DIVISION, MUNICIPAL COURT, 2000 Mass. App. Div. 63; 2000 Mass. App. Div. LEXIS 23, March 3, 2000, Decided

**OVERVIEW:** In a civil action, a plaintiff's appeal was dismissed after he failed to preserve the issue of a trial court's refusal to consider 44 submissions for written rulings of law for appellate review.

**CORE TERMS:** promissory note, holder, misrepresentation, conclusions of law, partnership, credibility, separately, forty-four, specially, appellate division ...

**John J. Pentz** and R. Christopher Green ...

☐ 23. Weatherford v. Bridgestone/Firestone, Inc., NO. 09-04-131 CV , COURT OF APPEALS OF TEXAS, NINTH DISTRICT, BEAUMONT , 2004 Tex. App. LEXIS 8772, September 30, 2004, Opinion Delivered, PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF MEMORANDUM OPINIONS AND UNPUBLISHED OPINIONS.

... St. Louis, MO, **John Pentz,** Maynard, MA, Kurt ...

Source: Legal > Cases - U.S. > Federal & State Cases, Combined
Terms: **john /3 pentz and date geq (01/31/2000)** (Edit Search)
View: Cite
Date/Time: Monday, January 31, 2005 - 12:20 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
♦ - Positive treatment is indicated
◎ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on April 20, 2005 he served a true copy of PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS by first class mail on the counsel listed below:

Philip A. O'Connell, Jr.
SONNENSCHEIN NATH & ROSENTHAL LLP
155 Federal Street, 17th floor
Boston, MA  02110

_____
John J. Pentz