UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN PENTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-10207 (JLT) |
| v. | ) | |
| | ) | |
| ALM, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

In Plaintiff's Opposition to Defendant's Motion to Dismiss, Plaintiff does not dispute the law set out in ALM's motion to dismiss -- that rhetorical hyperbole is not actionable, that statements must be of and concerning the plaintiff to be actionable, and that statements describing plaintiff's success, even if assumed to be false for the purposes of this motion only, are not defamatory. Instead, Plaintiff urges this Court to ignore the plain language and thrust of the Sidebar and read it against a tortured background of class action law. His theory seems to be that a district court's ruling in an unrelated case that Rule 11 sanctions should be levied against lawyers not present in this action and not mentioned in the Sidebar at issue, sanctions that were ultimately reversed twice by the United States Court of Appeals for the Seventh Circuit, somehow transforms the Sidebar from nondefamatory hyperbole to actionable libel. (Plaintiff's

Opposition to Defendant's Motion to Dismiss ("Pl. Opp.") at 1-5.) [1] That is not, however, the

applicable standard in looking at whether a given article is defamatory.  For these and the

reasons set forth below and in Defendant's previous memorandum, this action should be

dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which

relief can be granted.


## ARGUMENT

I.        **The Complaint Fails To State A Claim For Defamation.**

A.        **The term "'holdup artist'" is not reasonably capable of a defamatory**

**meaning.**

As set out in Defendant's previous memorandum, the law is clear that loose figurative

language cannot form the basis of a defamation claim. (Deft. Mem. at 6-7, 8-9.)  The courts

routinely have held that use of words and phrases such as "traitor," "rotten apple," "big fat ugly

Jew," "fellow traveler of fascism," and a "rip-off, a fraud, a scandal, a snake-oil job" did not

constitute actionable defamation, but was rather opinion, epithets or hyperbole, none of which

can form the basis for a libel action. *Letter Carriers v. Austin*, 418 U.S. 264, 284-86 (1974); *Park*

*v. Capital Cities Communications, Inc.*, 181 A.D.2d 192, 195-196, 585 N.Y.S.2d 902 (4th Dept.

1992); *Weiner v. Doubleday & Co.*, 142 A.D.2d 100, 535 N.Y.S.2d 597 (1st Dept. 1988);

*Buckley v. Littell*, 539 F.2d 882, 893 (2d Cir. 1976); *Phantom Touring v. Affiliated Publications*,

953 F.2d 724, 728 (1st Cir. 1992).

---

[1] References to the Complaint and to the record before this Court used in this memorandum are
in the same format as in Defendant's Memorandum of Law in Support of Its Motion to Dismiss
("Deft. Mem").

Plaintiff nonetheless maintains that the use of the phrase "'holdup artist'" in quotation marks in the Sidebar is actionable defamation because holdup artist "has taken on a new literal meaning," which is "extortionist." (Pl. Opp. at 4.) Plaintiff cites no support for this rather startling proposition, nor could he. A search in Lexis for the term "hold up artist" or "holdup artist" and "class actions" turned up no cases. Plaintiff attempts to bolster this argument by pointing to the likely audience of lawyers and judges for ALM's publications and extrapolating from that supposed fact that some kind of specialized secondary meaning within the class action bar should be attributed to "'holdup artist.'" (Pl. Opp. at 4.)

Plaintiff, however, provides no support for his two rather sweeping propositions that the audience for the Sidebar is comprised of "lawyers who are familiar with the plaintiffs' bar and class action litigation generally" and that they will understand "'holdup artist'" as having some kind of specialized meaning within the class action bar. (Pl. Opp. at 5.) Courts have rejected the argument that specialized knowledge must be read into publications aimed at general audiences. For example, in *Horne v. Matthews,* 1997 U.S. Dist. LEXIS 14518 (S.D.N.Y. 1997), the court granted a motion to dismiss a complaint by Mike Tyson's manager that a quote attributed to him about Tyson's partying before a boxing match in *The New York Post* had defamed him. The court rejected the plaintiff's theory that the readers of *The New York Post* would bring a detailed understanding of a fight manager's fiduciary duties to their reading of this article: "An average reader would not repair to his local law library to evaluate whether Horne has breached some complex fiduciary duty." *Id.* at *10-11. Similarly, the general audience of lawyers and other interested professionals who are readers of *The American Lawyer* and the Sidebar at issue here would not go on Westlaw or their local bar association library to examine the case law on class action objectors.

- 3 -

Plaintiff's reasoning concerning the applicability of the Seventh Circuit's opinion in *Vollmer v. Selden*, 350 F.3d 656 (7th Cir. 2003), is similarly misguided. (Pl. Opp. at 1-3.) The Sidebar does not accuse Plaintiff of a violation of Federal Rule of Civil Procedure 11, which was the subject of *Vollmer*. The Sidebar does not accuse Pentz of interposing unsubstantiated objections to class action settlements *solely* for the purpose of collecting a fee, conduct that the *Vollmer* court found might form the basis for Rule 11 sanctions. Plaintiff argues that because a district court in that case improperly considered newspaper articles about lawyers in assessing Rule 11 sanctions that were ultimately overturned, this Court should scrutinize the Sidebar more closely for defamatory meaning, and he further argues that the conduct found to be potentially sanctionable in *Vollmer* should be attributed somehow to the description of Plaintiff's practice in the Sidebar. But that is not the law. As Plaintiff appears to agree (Pl. Opp. at 5), in determining whether a given publication is or is not defamatory,

> Language is to be given its natural, plain, ordinary, obvious meaning. Words are to be construed in their plain and popular sense. "If the reader must struggle to see how and whether [the allegedly defamatory words] defame, by definition the words are not defamatory in law. Words which may be found defamatory only with the aid of a 'most vivid imagination' are not actionable."

ROBERT D. SACK, 1 SACK ON DEFAMATION, §2.4.2, at 2-19 (3d ed. 2003) (citations omitted). *See James v. Gannett Co.*, 40 N.Y.2d 415, 420, 353 N.E.2d 834, 838, 386 N.Y.S.2d 871, 874 (1976) ("court will not strain to place a particular interpretation on the published words"); *Idema v. Wagner*, 120 F. Supp.2d 361, 366-369 (S.D.N.Y. 2000), *aff'd in unpub. op.*, 29 Fed.Appx. 676 (2d Cir. 2002) (calling the plaintiff "over sensitive" in his interpretation of the term "militant" and holding that the term is not defamatory because it carries "no clear inference"); *Myers v. Boston Magazine Co., Inc.*, 380 Mass. 336, 341, 403 N.E.2d 376, 379 (1980) (court must consider "'the words themselves, taken in their natural sense and without a forced or strained

- 4 -

construction'") *citing Peck v. Wakefield Item Co.,* 280 Mass. 451, 453, 183 N.E. 70, 71 (1932); *Spalik v. Lona,* 99 A.D.2d 918, 919, 473 N.Y.S.2d 41, 43 (3d Dept. 1984) ("To establish a cause of action for defamation, the words used must be reasonably susceptible of a defamatory meaning without strained or artificial construction.").

Plaintiff rejects the construction set out in Defendant's previous Memorandum of "'holdup artist'" as someone who literally delays proceedings in a skilled fashion. (Deft. Mem. at 7-8.) Because the delays resulting from his objections to class action settlements are minor, Plaintiff argues, no reasonable reader would construe the term this way. (Pl. Mem. at 3-4.) Whatever the validity of Plaintiff's logic here, he ignores the alternative and obvious meaning of the word "'holdup,'" which is "impede." (Deft. Mem. at 7.) As Plaintiff himself admits, "Plaintiff's objective in objecting to a settlement is not to delay its approval, but to secure its rejection . . . to prevent the approval of the settlement in its current form." (Pl. Opp. at 4.) In other words, to "impede" the settlement. Whether viewed as literally true or rhetorical hyperbole, the Sidebar's use of the term "'holdup artist'" was clearly not defamatory as a matter of law.

## B.    The statement that Pentz succeeded in objecting in a class action is not defamatory.

Not only does Plaintiff not even address ALM's argument that statements that Plaintiff has succeeded in objecting to class action settlements are not defamatory, even if assumed to be false for the purposes of this motion only (Deft. Mem. at 9-10), he argues that such statements are true, just not in the precise way described in the Sidebar. (Pl. Opp. at 6-7.) Plaintiff states that in the specific instance of his success in objecting to class actions described in the Sidebar, the judge "gave Plaintiff some credit for making arguments that were accepted by the court," that

"there were at least five groups of objectors who claimed credit for the fee reduction,"

presumably including Plaintiff. He goes on to state that "[t]here have been cases where Plaintiff

was the sole objector and could rightly claim credit for having improved the settlement." (Pl.

Opp. at 6.) If a claimed defamation is admitted to be substantially true, it may not form the basis

for a libel suit. "[I]t is 'fundamental that truth is an absolute, unqualified defense to a civil

defamation action'…and 'substantial truth' suffices to defeat a charge of libel." *Guccione v.*

*Hustler Magazine*, 800 F.2d 298, 301 (2d Cir. 1986) (citations omitted). *See also Nicholson v.*

*Promoters on Listings*, 159 F.R.D. 343, 354 (D. Mass. 1994) ("At least where issues of public

concern are involved, the Constitution does not countenance liability in a defamation suit for true

statements… Furthermore, editorial or literary embellishments do not make true statements

false."). For these reasons, as well as the complete absence of any defamatory content, this claim

fails as a matter of law.

      **C.**       **The statements to which Pentz objects are not "of and concerning him."**

      Once again, Plaintiff does not dispute the law cited by Defendant that a statement must be

about him to be actionable. (Deft. Mem. at 10-11.) Rather, he argues that the reference to

judicial scorn for class action objectors in general defamed him personally because the Sidebar

did not provide an exhaustive list of *all* the cases in which he was involved. From this absence,

Plaintiff hypothecates, reasonable readers would not understand that the example of judicial

scorn cited referred to a case that did not include Pentz as an objector. (Pl. Opp. at 7-8.) Even if

Plaintiff were correct, which he is not, he ignores the plain language of the Sidebar. As set out by

ALM previously, the use of the word "ilk," meaning "sort, kind" clearly signals that the

reference was to lawyers of the same "kind" as Pentz, and not Pentz himself. When read as it

must be in the context of the Sidebar as a whole, it is clear that the specific instance of judicial

- 6 -

scorn cited was not directed at Plaintiff personally. For that reason, as well as the reasons set out

in Defendant's previous Memorandum, this claim should be dismissed.

### CONCLUSION

As is clear from reading the Sidebar as a whole, the activities of class action objectors in

general are somewhat controversial. But nowhere does the Sidebar accuse this Plaintiff of

unethical conduct or label him an extortionist. For the foregoing reasons and for the reasons set

forth in Defendant's previous Memorandum, this Court should dismiss the Complaint against

ALM Media, Inc., in its entirety, with prejudice.

Respectfully submitted,

ALM Media, Inc.

By its attorneys,

SONNENSCHEIN NATH & ROSENTHAL LLP


Philip A. O'Connell, Jr.    BBO #649343
155 Federal Street
17th Floor
Boston, MA 02110
(617) 574-4701
(617) 574-4744 (fax)

Of Counsel:

Devereux Chatillon, Esq.
(admitted *pro hac vice*)
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, NY 10020
212 768-6800
212 768-6700 (fax)

Robert A. Feinberg, Esq.
ALM Media, Inc.

- 7 -

345 Park Ave. So.
New York, NY 10010
212 592-4944
212 592-4900 (fax)


Dated:  May 3 , 2005